UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| WILLIAM R. THOMAS | CIVIL ACTION NO. 5:08CV1166 |
| VERSUS | JUDGE HICKS |
| PRIDE OIL & GAS PROPERTIES, INC. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM IN OPPOSITION TO THE DEFENDANT'S FRCP 12(B)(6)
MOTION TO DISMISS AND IN THE ALTERNATIVE , FRCP 12(E)
MOTION FOR A MORE DEFINITE STATEMENT**

**Introduction:**

    This case involves a grave injustice. A few oil and gas companies and lease brokers discovered, or learned from others, the potential of the Haynesville Shale Play in Northwest Louisiana sometime in 2005. They all kept this information secret.

    The Haynesville Shale is thought by many in the oil and gas business to be possibly the fourth largest gas deposit in the world. Knowing that once the potential of the find became public and landowners would not be willing to lease their land for amounts that were thought to be fair, absent these monster deposits, these oil and gas companies began to lease acreage from unsuspecting land owners at conventional prices.

    Prior experience, had taught the oil companies that once the landowners and competing oil companies discovered the existence of the shale gas deposits, competition could drive the price of lease bonuses to as much as $30,000.00 per acre.

    Armed with the knowledge of the Haynesville Shale and having learned from experience about the competition in the Barnett Shale play, numerous oil companies began to quietly acquire acreage from unsuspecting land owners at nominal prices. To guard the secret of the Shale, these

-1-

oil companies went to great lengths to hide its existence and their interest in it. One technique was to hire land companies to acquire land in the name of the land company, without disclosing the principal's identity, so the identity of the oil company would be hidden from public view.

Pride is one of those land companies. Acting for undisclosed principals, Pride acquired oil and gas mineral leases in its name for the benefit of its principals, Encana and Shell.

Pride acquired a mineral lease from the plaintiff and paid him $100.00 per acre for the rights to explore the Haynesville Shale. While the Plaintiff was aware of potential shallow deposits, the plaintiff had no knowledge of the deep gas deposits and had never heard of the Haynesville Shale.

Sometime later, the existence of the Haynesville Shale became public, and within less than 120 days the market value of the acreage skyrocketed to amounts approaching $30,000. This is 30,000% greater than the amount received by the plaintiff. The plaintiff leased his 17 acres to Pride for $1,700.00 when he potentially could have received over $500,000.00 for those leases.

Having justifiably felt cheated by Pride and its principals, the plaintiff brought suit for recision of the lease and offers to return the $1,700.00 he received.

The plaintiff offers three legal theories entitling him to be placed back into the position he was prior to the lease.

1. Recision based upon Suppression of the Truth. Louisiana Civil Code 1953
2. Recision based upon unilateral error. Louisiana Civil Code 1949
3. The Price was all out of proportion to the value. Louisiana Civil Code 2464

**Delictual Fraud vs Civil Code Article 1953 Fraud.**

The Defendant bases its motion is part on the failure of the Plaintiff to comply with FRCP Rule 9(b) which provides in part that "[i]n alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake." The Defendant has confused common law fraud as contemplated by FRCP Rule 9(b) with Louisiana Civil Code Article 1953 Fraud, which is actionable merely by the suppression of the truth. The term Fraud as used in this code article does not have the same meaning as the Anglo-American legal term "fraud." The term "fraud" as used in Article 1953 is a translation of the French word "dol" and is much broader.

The elements of Anglo-American delictual fraud are: (1) misrepresentation of a material fact, (2) that the misrepresentation was made with intent to deceive, and (3) that the misrepresentation caused justifiable reliance that resulted in an injury. *Guidry v. United States Tobacco Co.,* 188 F.3d 619, 627 (5th Cir. 1999). On the other hand, an action under Civil Code Article 1953 can be plead without use of the word "fraud" by merely pleading misrepresentation or suppression of the truth with the intent to gain an advantage, or cause a loss or inconvenience, which the plaintiff has plead with particularity. This distinction was recognized in the case of *Berk-Cohen Associates vs Orkin Exterminating* 2004 U.S. Dist. LEXIS 10186 (E. Dist. La 2004) (See also the Revision Comments - 1984 to Article 1953 and Litvinoff, *Supra* page 50) The plaintiff's motion on this point has no merit.

**Article 1953 Recision base on Fraud** *(dol)*

Louisiana Civil Code Article 1953 provides:

"Fraud is a Misrepresentation or suppression of the truth made with the intention
either to obtain an unjust advantage for one party or to cause a loss or inconvenience
to the other. Fraud may also result from silence or inaction."

It has generally been held by the courts that, [t]o find fraud from silence or suppression of the truth there must be a duty to speak or disclose information unknown to the other party. *Green v. Gulf Coast Bank, 593 So. 2d, 593 So. 2d 630, 632 (La. 1992)* citing *Markey v. Hibernia*

*Homestead Ass'n,* 186 So 757, 764 (La App. Orl. Cir. 1939)[1]  In this case however, the court found that the plaintiff seeking recision was sophisticated enough to have ascertained the truth, and there were no special circumstances that would impose a duty to disclose information.  The Green court found that there was a relative balance in the position of the parties and that the plaintiff could have been reasonably expected to have ascertained the truth.  This case suggests that when there is an extreme disparity in the bargaining position of the parties, or when the party in error could not have easily ascertained the truth, a duty to inform may arise.

The relative position of the parties has been a factor in many suppression of the truth cases. In fact, the relative position of the parties appears to have been the deciding factor in the *Markey* decision cited by the *Green* court.

The case of *Zadeck vs. Arkansas Louisiana Gas Company*, 338 So. 2d. 303 (La. App. 2 Cir. 1976) presented a similar factual situation.  However, the *Zadeck* case involved an error solely as to value not as quality of the thing.  In *Zadeck* the plaintiff entered into a contract to sell gas to the defendant.  Later the plaintiff sued to rescind the agreement on the grounds that the defendant withheld information concerning the value of the gas.  Finding for the defendant the court observed:

> "In light of the relative equality of the bargaining position of the parties to the contract, we find no duty on the part of Arkla to reveal market information to the plaintiffs."

---

[1] While this is the general rule there is good faith argument that the 1984 revisions to the Civil Code eliminated the judicial requirement of duty to inform.  Duty to inform originated as an exception to the language of Art. 1832 (1870) and the enactment of revised Art.1954 appears to have codified this exception since now, if the party could readily have learned the truth then there would be no need to explore a possible disparity in ability to determine reality.  The revision of these code articles appears to have changed the statutory scheme and obsoleted the concept of duty to disclose.  There is a good faith argument that Art. 1954 eliminated the need of a duty to disclose in cases of suppression of the truth cases by providing an exception when the party claiming fraud could have ascertained the truth without difficulty, inconvenience, or special skill.

The finding of a great disparity in knowledge, skill, sophistication or bargaining position can result in a duty to disclose information. The court in Zadeck observed:

> "In extreme cases in which there existed great disparity of the bargaining position of the parties, our courts have set aside sales. In *Griffing v. Atkins*, 1 So. 2d 445 (La. App. 1st Cir., 1941), an ignorant finder of a ring took it to a jeweler to have it examined. Because of fraud and misrepresentations made by the jeweler, the owner sold the ring to an employee of the jewelry store for approximately one-tenth of its value. The sale was set aside for fraud. There are no extreme circumstances in this case."

In finding for the plaintiff in *Griffing*, the court observed:

> "As a matter of fact his fraud wasn't active but rather of a passive nature in that he failed to disclose the information which he was in <u>justice and in equity</u> bound to disclose to the other party to the contract who was not on an equal footing with him. He suppressed the truth, and therefor the case comes within the rules laid down in our Civil Code." *Griffing* supra at 450. *(Emphasis added)*

The disparity concept created a duty to inform in the case of *Deutschman vs. Standard Fur Company*, 331 So. 2d 219 (La. App. 4th Cir. 1976) in that case the court found that since the defendant was an expert, it was his duty to inform the plaintiff who lacked his expertise.

Justice, equity, good faith, and fairness may create the duty to disclose information when there is a great disparity in the sophistication, expertise or bargaining position of the parties. The modern concepts of good faith and unconscionability are also a source of a duty to disclose, which must be imposed to prevent a party in a vastly superior position from abusing the party in the inferior position.

Professor Litvinoff offers this uncanny example in the section of his law review article dealing with *Information, Silence, Bad Faith and Fraud*:

> "[A] contract between two neighbors may call for one solution, while a contract between a consumer and a retailer, or a retailer and a manufacturer, may call for another, and a solution that may befit a contract between a <u>farmer and an oil company</u> may not be

appropriate to a contract between two powerful corporations." *Litvinoff*[2] *(Emphasis added)*

To say this is an extreme case is almost an understatement. The Louisiana Second Circuit in *Zadeck (supra)* thought that the difference in the price and value of one-tenth was extreme. In this case difference between the price and the value is one-three thousandths. It is so extreme that nothing can be found in the case law like it. Not only is the difference in the price and value extreme but the difference in the relative position of the parties in terms of sophistication, expertise, knowledge, skill, bargaining position and power is extreme. The defendant in this case is only a front for very large oil and gas companies. This is a dispute between very large corporate actors and a small land owner. There was an expectation by the plaintiff that he would be treated fairly, but he was not.

The huge disparity in the positions of the plaintiff and the defendant, the extreme circumstances, justice, equity, fairness and good faith, created a duty in the defendant to advise the plaintiff that his land sat on top of one of the worlds largest natural gas finds. If the defendant had done that then the plaintiff would not have signed the lease.

One final comment. Technically, as shown above, the existence of a duty to inform turns on the facts of the case. And if facts are involved then a Rule 12(b)(6) motion has no merit. The Plaintiff's complaint states a cause of action.

**Error:**

Louisiana Civil Code Article 1948 provides that error may vitiate consent. Louisiana Civil Code Article 1949 provides that "Error vitiates consent only when it concerns a cause

---

[2] Saul Litvinoff, *Vices of Consent, Error, Fraud, Duress, and an Epilogue on Lesion*, 50 LA. L. Rev. 1 (1989) at 65.

without which the obligation would not have been incurred and that cause was known or should have been know to the other party."

Louisiana Civil Code Article 1950 describes the error that concerns cause:

"Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object of a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should good faith have regarded, as a cause of the obligation."

Error is a false perception of reality and may result from the ignorance of something that really exists. (LSA-CC Art. 1821 (1870). An error that relates to facts that if the mistaken party had known the reality, he would not have consented to the agreement, will void the consent.. (LSA-CC Art 1949). An error as to the substantial quality of the thing that is the subject of the contract is the type of error which vitiates consent. (LSA-CC Art. 1949). An error that concerns the value of the thing which is the object of the contract alone will not generally vitiate consent. *Citizens Bank of La. v. James* 26 La.Ann.264 (1874) However, an error as to value should not be confused with an underlying error as to a substantial quality of the thing. Obviously, the presence or absence of a substantial quality of the thing can affect its value. An error as to value occurs when a party makes the wrong economic appraisal from the right facts, not when the value differs because the thing contracted has a substantial quality the party does not know exists. <u>Litvinoff</u> (supra) at 28.

The concept of vitiated consent is intended to avoid injustice and promote equity the "Louisiana Courts have said that in the case of doubt as to error in the motive of one of the parties courts will lean heavily in favor of one seeking to avoid loss and against one seeking to obtain a gain." Revision Comments - 1984 to Civil Code Art. 1952. Dorvin - Huddleston

Developments, Inc. v Connolly 285 So. 2d 359 (La. App. 4th Cir. 1973) reversed on other grounds 298 So. 2d 734 (La. 1974) on remand 320 So. 2d 253 (La. Appl 4th Cir. 1975).

      The defendant argues that the plaintiff's error was error as to the value versus error as to a substantial quality of the thing.  As stated earlier, an error as to value occurs when a party makes the wrong economic appraisal from the right facts, not when the value differs because the thing contracted has a substantial quality the party does not know exists. The plaintiff did not know of the Haynesville Shale and its great potential.  The plaintiff intended to lease to the defendant the rights to explore for oil and gas at depths and zones that were commonly known in the area for many years.  In fact, the plaintiff was quite satisfied with the lease contract to explore the commonly known depths or reservoirs.

      However, if the plaintiff had known of the Haynesville Shale and its great potential, he would have reserved the deep rights or demanded a higher price.  The plaintiff will be perfectly satisfied with a revision of the lease that reserves rights to the Haynesville Shale. It is easy to conclude that plaintiff's error was as to a substantial quality of the thing and a cause of the agreement and not merely as to value.  One cannot be expected to judge the value of what he does not know exists.  The Haynesville Shale was buried treasure.  The defendant knew it was there. The plaintiff did not.  The defendant also knew that the plaintiff did not know. Accordingly, the defendant was able to exploit the plaintiff's ignorance.

      As with the issue of fraud, the issue of whether the error claimed by the plaintiff was an error as to value only, or an error as to a substantial quality of the thing, is a factual issue not suitable to resolution in the instant motion of the defendant.  The plaintiff pleads that he did not know of the Haynesville Shale and that this was a substantial quality of the thing.

These are questions of fact. The defendant wants to re-frame the plaintiff's complaint as one as to value only. The plaintiff gets to state his own claim. The defendant cannot reword it. The plaintiff pleads facts that give rise to a cause of action. If facts are involved, the Rule 12(b)(6) motion has no merit. The Plaintiff's complaint states a cause of action.

**Nominal Price Article 2464**

The defendant correctly points out that the Louisiana Supreme Court held that there was no right of action under Louisiana Civil Code Article 2464 to annul the sale of mineral rights on the ground that the price stipulated is out of all proportion to the value of the mineral rights. *Haas v. Cerami*, 210 La. 612, 10 So.2d 61, 64 (La 1942).

The rational of this holding was that the value of a royalty interest or mineral interest in unproven land is essentially speculative. If the value is only speculative, then the defendant fails to meet the jurisidictional amount in controversy. This decision is now 66 years old and there have been decades of advances in the oil and gas exploration science. The foundation of this holding has been eroded by more than half a century of advances in the technology of oil and gas exploration. If this was foundation for a bridge subject to 66 years of erosion, a reasonable man might be hesitant to cross it. This holding cries for re-examination.

Additionally, the application of the holding in this case would involve the defendant proving that the leased land in this case is "unproven land'. This is a factual issue more suited to be resolved by motion for summary judgment or trial.

The defendant also argues that Article 2464 only applies where the price paid for the sale of a thing is truly nominal. The defendant paid $1,700 and the plaintiff contends that it

is worth as much as $500,000, which if true would make the price paid by the defendant "truly nominal" under any definition of the word. Again, whether the price paid is or is not "truly nominal" is a question of fact not suitable for disposition in the defendant's Rule 12(b)(6) motion.

**Motion for a More Definite Statement - FRCP 12(e)**

Federal Rule of Civil Procedure Rule 8 provides that "A pleading that states a claim for relief must contain:... (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." The plaintiff's complaint meets these requirements.

**Conclusion:**

In the last twenty to thirty years there has developed a culture in this country which expects honesty and openness from big business and corporations. Disclosure, consumer awareness, fairness, good faith, and good citizenship on the part of big business have become expected as contemporary social mores and has resulted in legislation to prevent abuse.

A decision in this case against the defendant rescinding the lease will result in no prejudice to Defendant and its principal big oil companies other than to deprive them from obscene profits at the expense of the plaintiff, a small land owner.

The relative position of the parties should have a legal bearing on the decision of the court. This is not a dispute between titans, it is a dispute between billion dollar multi-national corporate conglomerates and a man that owns 17 acres in Desoto Parish.

This memorandum ends as it began. This case involves a grave injustice. Our Civil Law tradition is rich and flexible enough for the court to find the best way to rectify this

injustice.

        Respectfully submitted,

        s/ R. Cody Mayo, Jr.
        R. Cody Mayo, Jr., JD, LLM, CPA
        La. Bar Roll No. 09186
        820 Jordan, Suite 480
        Shreveport, Louisiana 71101
        Tele: (318) 222-1384
        Fax: (318) 425-1644
        ATTORNEY FOR PETITIONER

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of October, 2008, a copy of the above and foregoing Memorandum in Opposition to the Defendant's FRCP 12(b)(6) Motion to Dismiss and in the Alternative, FRCP 12(e) Motion For a More Definite Statement was filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Carl D. Rosenblum, T.A. by operation of the court's electronic filing system. I also certify that I have mailed by United States Postal Service this filing to Carl D. Rosenblum, T.A. at his address of 201 St. Charles Avenue, 49th Floor, New Orleans, Louisiana, 70170-5100.

        s/ R. Cody Mayo, Jr.
        R. Cody Mayo, Jr., JD, LLM, CPA
        La. Bar Roll No. 09186
        820 Jordan, Suite 480
        Shreveport, Louisiana 71101
        Tele: (318) 222-1384
        Fax: (318) 425-1644
        ATTORNEY FOR PETITIONER