UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| WILLIAM R. THOMAS | CIVIL ACTION NO. 08-1166 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| PRIDE OIL & GAS PROPERTIES, INC. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant Pride Oil and Gas Properties, Inc. ("Pride")'s *Motion to Dismiss Plaintiff's Amended and Superceding Petition, and, in the Alternative, Motion for a More Definite Statement* (Record Document 12). For the reasons which follow, Defendant's *Motion to Dismiss* is **GRANTED**, Plaintiff's claims are **DISMISSED with prejudice**, and Defendant's *Motion for a More Definite Statement* is **DENIED as moot**. A judgment consistent with this memorandum ruling shall issue contemporaneously herewith.

**I. BACKGROUND**

On February 26, 2007, Plaintiff and Defendant entered into an "OIL, GAS, AND MINERAL LEASE" (the "Lease"). The Lease recites that Plaintiff, in exchange for $100.00, royalties of three-sixteenths of the market value for oil and gas "produced and saved" from the land, and other valuable consideration, leased Defendant 17 acres in Red River Parish, Louisiana for an initial term[1] of three years.

---

[1] Upon expiration of the initial three-year lease term, the Lease provides that any portions of the land not being used for "operations on or production from a pooled unit or units embracing [the] land covered [by the Lease] and other land," will revert to Plaintiff unless

See Record Document 12-4, "Oil, Gas and Mineral Lease," ¶ 1-4.

Plaintiff subsequently filed suit in state court, seeking to rescind the Lease. See Record Document 1-2. Defendants removed the dispute to this Court, where subject matter jurisdiction is founded on the parties' diversity of citizenship. See Record Document 1-1. Plaintiff later filed an Amended and Superceding Petition to rescind the Lease. See Record Document 11. Defendant responded by filing the instant motion. See Record Document 12.

Plaintiff's Petition alleges that "the Haynesville Shale formation, . . . one of the largest natural gas deposits in the world," is located beneath the leased property, and that "acreage located in areas like the Haynesville Shale is very valuable." Id. ¶ 7. Plaintiff also claims that "[a]t the time of the lease the Lessor did not know of the existence of the Haynesville Shale deposits or of the[ir] extreme value . . . but the Defendant and/or its principal did know of the existence and value of the Haynesville Shale," and "took great steps to conceal the existence of the Haynesville Shale from the public." Id. ¶¶ 8-9. In addition, Plaintiff alleges that the "Defendant and[/]or its principal knew or should have known that the Lessor had no knowledge of the Haynesville Shale deposits." Id. ¶ 10. Plaintiff claims that he could not have

---

Defendant exercises an option to extend the Lease term for up to two additional years. In that event, Defendant would be obliged to pay Plaintiff $37.50 per "net mineral acre" for all land not included in the producing pooled units, and all terms of the Lease would remain in effect as if the agreement "originally provided for a primary term of Five (5) years." See Record Document 12-4, "Exhibit A," ¶ 2-3.

ascertained knowledge regarding the existence and value of the Haynesville Shale deposits "without difficulty, inconvenience, or special skill." Id. ¶ 11. Plaintiff goes on to allege that Defendant was able to "induce" it into the Lease at a rate that was "the going rate for commonly known deposits in the area," and "less than the market rate for Haynesville Shale type deposits." Id. ¶¶ 12, 15. Plaintiff's Petition alleges that "the true value of the [leased] acreage . . . may be over Ten Thousand Percent (10,000.00%) higher than the price received by the Lessor." Id. ¶ 14. According to Plaintiff, had he "known of the existence of the Haynesville Shale and its true value," he "would not have agreed to the mineral lease on the terms and at the price paid by Defendant." Id. ¶ 16. Plaintiff's Petition does not contain any allegation that he sought an evaluation from or consulted a lawyer or another independent party regarding the terms of the lease allegedly proposed by Defendant.

Plaintiff, citing Louisiana Civil Code Articles 1948, 1953, and 1959, claims that the Lease should be rescinded because his consent was vitiated "due to fraud by suppression of the truth by the Defendant or its agents, with the intent to obtain an unjust advantage." See Record Document 11, ¶ 23. In the alternative, Plaintiff contends that rescission of the lease is warranted under Louisiana Civil Code Article 1949 because he was mistaken "concern[ing] a cause [as to the substantial quality of the thing] without which the obligation would not have been incurred[,] and that cause was known or should have been known to the Defendant." Id. ¶¶ 17, 25. Also in the alternative, Plaintiff argues that the lease ought to be rescinded under

Louisiana Civil Code Article 2464 "because the price paid by the Defendant was grossly out of all proportion with the value of the minerals sold." Id. ¶ 27.

## II. MOTION TO DISMISS STANDARD

In evaluating a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007). However, the court "will not strain to find inferences favorable to the plaintiff." Southland Sec. Corp. v. INSpire Ins. Solutions Inc., 365 F.3d 353, 361 (5th Cir. 2004).

In order to survive Defendant's challenge to his Petition, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." In re Katrina Canal Breaches Litig., 495 F.3d at 205 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). Those "[f]actual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all the allegations in the Petition are true (even if doubtful in fact)." Id. In addition, the facts as pled must be "specific," and "not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994).

## III. LAW AND ANALYSIS

As noted above, this Court's subject matter jurisdiction is founded in diversity, and the parties do not appear to dispute that Louisiana law governs the substance of the dispute at bar.

**A. Fraud Claim**

Article 856 of Louisiana's Code of Civil Procedure mandates that "[i]n pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity." Id.; see also Fenner v. DeSalvo, 01-2223 (La. App. 4 Cir. 4/17/02); 826 So. 2d 39, 44. And article 1953 of the Louisiana Civil Code defines fraud as

> a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.

LA. CIV. CODE ANN. art. 1953. Plaintiff's Petition does not contain any allegation that Defendant made an affirmative misrepresentation to him in the course of the parties' negotiations. Rather, Plaintiff claims that "Defendant and/or its principal . . . kn[e]w of the existence and value of the Haynesville Shale," and "took great steps to conceal the existence of the Haynesville Shale from the public." Record Document 11, ¶¶ 8-9. Accordingly, Plaintiff's claim under Article 1953 is necessarily founded on an allegation that Defendant suppressed the truth and perpetrated fraud through silence or inaction.

Pursuant to Louisiana law, in order "[t]o find fraud from silence or suppression of the truth, there must exist a duty to speak or disclose information." Greene v. Gulf Coast Bank, 593 So.2d 630, 632 (La. 1992). Here, no such duty existed. The Louisiana Mineral Code unequivocally provides that a "mineral lessee" such as

Defendant "is not under a fiduciary obligation to his lessor." LSA–R.S. 31:122. Moreover, Louisiana's Supreme Court has characterized a fiduciary relationship as "one that exists when confidence is reposed on one side and there is resulting superiority and influence on the other." Plaquemines Parish Comm'n v. Delta Dev. Co., 502 So.2d 1034, 1040 (La. 1987). Plaintiff's Petition alleges that Defendant "induce[d]" it to enter into the Lease, Record Document 11, ¶ 12, and that Defendant and/or its principal "took great steps to conceal the existence of the Haynesville Shale from the public." Id. ¶¶ 8-9. However, these allegations do not amount to a claim that Plaintiff reposed confidence in Defendant which resulted in Defendant's superiority and influence over Plaintiff. See Plaquemines Parish Comm'n, 502 So. 2d at 1040. Indeed, Plaintiff's claim that Defendant concealed the existence of the Haynesville Shale is not personal to Plaintiff, but rather a general grievance allegedly suffered by the public at large. Moreover, an invitation to contract, without more, is insufficient to establish a fiduciary relationship or a duty to disclose information concerning the value of the property. See Haas v. Cerami, 10 So.2d 61, 64 (La. 1942) (no duty existed to disclose "inside information" regarding market conditions that would have impacted the value of the property where a "fiduciary or confidential relationship" was not alleged); Pioneer Valley Hosp., Inc. v. Elmwood Partners, L.L.C., 01-453 (La. App. 5 Cir. 10/17/01); 800 So. 2d 932, 937 (the plaintiff failed to state a cause of action in fraud, because the defendant "had no duty to disclose any 'special knowledge it may have had regarding market conditions that would impact

the value of the property' that was the subject of the contract.").

In his Opposition to the instant motion, Plaintiff cites <u>Griffing v. Atkins</u>, 1 So. 2d 445 (La. App. 1 Cir. 1941), a case in which a jewelry store employee solicited Willie Sims, an uneducated person who found a diamond ring, to obtain an appraisal from the store. The jewelry store owner ended up purchasing the ring from the plaintiff for a fraction of its worth.

<u>Griffing</u>, however, is inapposite to Plaintiff's suit. In <u>Griffing</u>, Louisiana's First Circuit Court of Appeal held that because Mr. Sims went to the store "for technical advice as to the character and value of the ring," he "had a right to expect, in fair dealing, the true information which he had been invited to seek there." <u>Id.</u> at 450. Annulment of the contract of sale was appropriate because Sims should not have been "taken advantage of" as he was when jewelry store employees "attempted to buy the ring at a price which was so much out of proportion to its true value." <u>Id.</u> In this case, there is no allegation that Defendant offered to appraise the property for Plaintiff. Nor is there any allegation that Defendant was asked to provide, or provided technical advice regarding the existence and/or value of the potential subsurface mineral deposits under the leased acreage. Moreover, the Complaint does not allege that a pre-existing personal or professional relationship subsisted between the parties. <u>Cf.</u> <u>Griffing</u>, 1 So. 2d at 446 (the jewelry store employee who suggested that Sims have the ring appraised was "friendly with the Sims").

This Court is bound to accept as true Plaintiff's allegation that he "lack[ed]

knowledge regarding the existence of the Haynesville shale deposit." Record Document 1-2 ¶ 12. However, the Petition contains no allegation that Plaintiff, who, as the landowner, presumably had possession of and access to the land that he agreed to lease, was somehow prevented from consulting an expert or experts regarding the existence of mineral deposits or lack thereof, and the terms and conditions of the Lease. To the extent that Plaintiff was unaware of the value and qualities of property he owned, he could have sought or reviewed advice from an independent third party, such as a petroleum engineer or an attorney. See Pioneer Valley Hospital, Inc. v. Elmwood Partners, L.L.C., 800 So.2d 932, 937 (holding that a vendor's failure to disclose the fair market value of a building did not constitute fraud or redhibitory effect, and noting that "[w]here the means of ascertaining the value of property are equally available to both parties, a sale may not be set aside because information relating to its value was withheld by either party").

Nothing in the Petition leads this Court to believe that the Lease resulted from anything other than a common, arms-length negotiation between Plaintiff and Defendant. As a result, this Court concludes that Defendant did not owe Plaintiff a duty to disclose any information it may have possessed regarding the possibility that substantial mineral deposits underlay Defendant's property, and Plaintiff's claim of fraud is dismissed.

### B. Claim that the Price Paid was Out of Proportion with Value

As noted above, Plaintiff, citing Louisiana Civil Code article 2464, argues in

the alternative that the Lease ought to be rescinded under "because the price paid by the Defendant was grossly out of all proportion with the value of the minerals sold." See Record Document 1-2, ¶ 27. Article 2464 states in pertinent part: "The price [of a contract] must not be all out of proportion with the value of the thing sold. Thus, the sale of a plantation for a dollar is not a sale, though it may be a donation in disguise." LA. CIV. CODE. ANN. art. 2464.

Louisiana Revised Statute Section 31:18 defines a mineral right as "an incorporeal immovable." Id. Rescission of a contract for sale of immovable property is authorized as "lesion beyond moiety" under the Civil Code when "the price is less than one half of the fair market value of the immovable . . . ." LA. CIV. CODE ANN. art. 2589. However, for over eighty years, it has been the law in Louisiana that a sale of mineral rights "cannot be regarded as . . . falling within the terms of the law which affords relief on the score of lesion; its inherent nature and character being such as not to be susceptible of having an intrinsic definite and fixable value." Wilkins v. Nelson, 99 So. 607, 608 (La. 1924); see also Haas, 10 So.2d at 63-64 (applying Wilkins to bar a suit to annul a sale or an agreement for the sale of mineral rights in non-producing land, brought under article 2464 of the Civil Code, "on the ground that the price stipulated is all out of proportion to the value of the mineral rights sold or to be sold").

Thus, even accepting the allegations of Plaintiff's Petition as true, the Lease may not be rescinded on the grounds that the consideration was allegedly out of

proportion with the value of the mineral rights conveyed. In 1974, the State's Legislature codified the jurisprudential rule expressed in Wilkins as Louisiana Revised Statute Section 31:17, which clearly recites that "[a] sale of a mineral right is not subject to rescission for lesion beyond moiety." This provision of Louisiana's Mineral Code, to the extent it appears to conflict with Louisiana Civil Code articles 2464 and 2589, trumps: "In the event of conflict between the provisions of th[e Mineral] Code and those of the Civil Code or other laws the provision of this Code shall prevail." LSA–R.S. 31:2.

In Wilkins, the plaintiff, who "was ignorant of [mineral markets] and had never had any experience," sued to set aside a sale of all the oil, gas, and mineral rights in and under 120 acres of land situated in Ouachita parish on the grounds of lesion beyond moiety. The defendant, who the plaintiff alleged "had spent his life in [mineral] work," paid $900 cash and a one-eighth interest in and to all of the oil produced or saved from the land. Wilkins, 99 So. at 607. In upholding the lower court's finding of no cause of action, The Wilkins court observed that

> The seller who sells [mineral] rights, and the buyer who buys, does so with a speculative intent, and it is a matter of common knowledge that every real estate owner uses his own judgment in estimating the sale value of his property. In the admitted speculative nature of the intangible right it is impossible that there could be any fixed and dependable valuation. The price may be at the very lowest today and by 'leaps and bounds' reach the very peak of prices tomorrow, dependent on the production or nonproduction of oil and gas in the neighboring territory.

> After all is said the seller usually gets the best price in cash that he can get with the hopes of getting a royalty in case oil or gas is discovered, and the buyer paying the price in cash estimated by the seller, assumes all of the chances and hazards of his undertaking. Had there been no gas found in the land in question the plaintiff would doubtless have been perfectly satisfied with the case price he received, but, gas having been discovered, he now seeks an additional profit.

Id. At 609. The same logic applies to the case at bar: this Court accordingly dismisses Plaintiff's claim that the price he received for the mineral rights was out of proportion with their value.

### C. Claim of Mistake as to a Cause of the Contract

There remains only Plaintiff's claim that rescission of the lease is warranted under Louisiana Civil Code article 1949 because he was mistaken "concern[ing] a cause [as to the substantial quality of the thing] without which the obligation would not have been incurred[,] and that cause was known or should have been known to the Defendant." Record Document 1-2 ¶¶ 17, 25. This Court accepts as true Plaintiff's allegation that he was unaware of the possibility that potentially valuable shale deposits existed under his land. However, Plaintiff's lack of awareness does not amount to a mistake concerning "a substantial quality" of the mineral rights that the Lease conveyed. As the Wilkins court suggested, the ease or difficulty of extracting mineral deposits, as well as market conditions, cannot be assumed as an initial matter. And the Petition filed in this case does not contain an allegation that the existence of mineral deposits underlying the land subject to the Lease had been

proven before the parties entered into that agreement. See Haas, 10 So.2d at 63 ("[t]he value of a royalty or mineral interest in unproven land is essentially speculative").

Furthermore, even if the existence of mineral deposits had been proven before the parties executed the Lease, it does not necessarily follow that Plaintiff "would not have . . . incurred" the obligation. As Defendant points out, Plaintiff obviously "knew that the only reason Pride was interested in acquiring the mineral lease was its hope that valuable oil, gas, and/or minerals would be found beneath the land's surface." Record Document 19 at 6. Plaintiff leased the property to Defendant because Defendant was willing to assume the incidental expenses and risks of exploring the land and exploiting any mineral deposits found therein. Once news of the Haynesville Shale broke, Plaintiff came into court "seek[ing] an additional profit." See Wilkins, 99 So. at 609. The Wilkins court's observations are apt in the context of this claim. To reiterate:

> In the admitted speculative nature of the intangible right it is impossible that there could be any fixed and dependable valuation. The price may be at the very lowest today and by 'leaps and bounds' reach the very peak of prices tomorrow, dependent on the production or nonproduction of oil and gas in the neighboring territory.

Id. Indeed, an article published in the Shreveport Times last month illustrates that point: "In many ways, exploration and production [of the Haynesville Shale] . . . has been frozen in the early stages because gas prices dropped so steeply only months after the shale's discovery was announced." Drew Pierson, *Haynesville Shale Study*

*to be Released Soon*, Shreveport Times, April 27, 2009, *available at* http://www.shreveporttimes.com/apps/pbcs.dll/article?AID=2009904270307.

In light of the particularly speculative nature of mineral exploration and production, this Court will not hold that an error as to the existence of a mineral deposit(s) constitutes an error as to a "cause without which the obligation would not have been incurred." As a result, Plaintiff's claim pursuant to Louisiana Civil Code article 1949 is dismissed. Such a claim, upon the facts herein presented, is tantamount to a suit for lesion beyond moiety: "The foundation of Plaintiffs' allegations as to error concerns the perceived market value of the lease rights they conveyed, not in the principal cause of the lease. To pursue a claim for purported deficiency in the value of these lease rights . . . , be it in error or fraud, is to pursue a claim for lesion beyond moiety." See Ezernack, et ux v. Honeycutt Hill Corp., Civil Suit No. 61043 (11th Jud. Dist. Ct. In and for the Parish of Sabine, Louisiana (02/23/09)) (dismissing the plaintiff's claim filed pursuant to Louisiana Civil Code article 1949, which was based on the plaintiff's alleged ignorance of the existence and of Haynesville Shale deposits).

### IV. CONCLUSION

For the reasons stated above, Defendant's *Motion to Dismiss* (Record Document 12) is **GRANTED**, Plaintiff's claims are **DISMISSED with prejudice**, and Defendant's *Motion for a More Definite Statement* is **DENIED as moot**. A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 7th day of May, 2009.

                                                   *[signature]*
                                              S. MAURICE HICKS, JR.
                                              UNITED STATES DISTRICT JUDGE